ANDREW THOMPSON, DEFENDANT IN ERROR, v. TRENTON WATER POWER COMPANY, PLAINTIFF IN ERROR.

Argued March 16, 1909—Decided June 14, 1909.

1. In construing a document the grammatical and ordinary sense of the words is to be adhered to unless they would lead to some absurdity or some repugnance or inconsistency with the rest of the instrument, in which case the grammatical and ordinary sense of the words may be modified so as to avoid the absurdity and inconsistency, but no further.

2. A conveyance by the owner of a water power to a millowner of water for the use of the mill, by way of lease and release, provided that the lessor should uphold, maintain and repair a raceway and keep up and repair the guard walls and banks; that if a breach should happen to any part of the banks it would repair the same within as short a time as the nature of the case would admit and that the rents should abate if the repair was not made

within thirty days and that the lessor should be liable for no other damage by reason of such breach not being repaired, nor for any stoppage of the water to be occasioned by the widening and clearing out or repairing of the raceway, except the abatement of rent after thirty days; and that for thirty days' stoppage in one year there should be no reduction, the right to stop the water for that term for necessary purposes, in their discretion, being expressly reserved; and if at any time there should be a deficiency of water to supply the lessees with the quantity leased, and such deficiency should be caused or continued, after notice, by the willful misconduct or neglect of the lessors, the lessees should have a right to recover damages in addition to the rent to be withheld, such additional damages in no case to exceed the amount of rent for the time that such deficiency might continue. *Held,* that the lessor was liable for compensatory damages for the stoppage of water caused by its permitting a city to construct a drain under the raceway or canal.

3. By a conveyance of water from a raceway it was provided that the grantor reserved whatever time in each and every year might be requisite to make improvements and repairs to the raceway, dams, gates, aqueducts and other appurtenances thereof and that it was not to be held liable for any damages for any stoppage occasioned by such repairs and improvements or by breaks, floods or drought of summer, *nor for any other cause whatever,* however long the said stoppage might continue, unless the grantor take more than thirty days in any one year to enlarge or increase the capacity of the raceway or to make entirely new additions thereto, in which case only it should be liable to an amount of damages not in any case to exceed the rent which would have accrued during such excess over thirty days. *Held,* that the grantor was liable for compensatory damages for the stoppage of water caused by permitting a city to construct a drain under the raceway or canal.

On error to the Mercer Circuit.

The defendant is the owner of a water power; the plaintiff the grantee of water rights for the use of his mill. The action is brought for damages suffered by the plaintiff by reason of the shutting off of water from his mill from June 17th to July 19th, 1906. The case turns wholly upon the construction of the various grants from the defendant and its predecessor, the Trenton Delaware Falls Company, to the plaintiff and his predecessors in title. The earliest grant was by way of lease and release in 1835 for two hundred and forty-one square inches of water. The lease provided that the lessor

should uphold, maintain and repair the canal or main raceway and keep up and repair the guard walls and the banks of the canal; that if at any time a breach should happen to any part of the banks they would repair the same within as short a time as the nature of the case would admit, and that the rent should abate if the repair was not made within thirty days, and that they would be liable to no other damages for such breach not being repaired, nor for any stoppage of the water to be occasioned by their widening, clearing out or repairing the canal or main raceway, except the abatement of rent after thirty days. The lease further provided that "for thirty days' stoppage in any one year there should be no reduction, the right to stop the water for that term for necessary purposes in their discretion being expressly reserved," and that if at any time there should be a deficiency of water to supply the lessees with the quantity leased, and such deficiency should be caused or continued after notice through the willful neglect or misconduct of the lessor, that then the lessees should have a right to recover damages in addition to the rent to be withheld, "such additional damage in no case to exceed the amount of rent for the time that such deficiency may continue."

The next grant was by way of deed of bargain and sale for one hundred square inches of water to be drawn under a head of three feet, which was granted subject, among other conditions, to the following: "The said party of the first part hereby reserve to themselves, their successors and assigns, whatever time in each and every year may be requisite to make improvements and repairs to the said canal or main raceway, the dams, gates, aqueducts and other appurtenances thereof. And it is hereby covenanted and agreed by and between the said parties that the said party of the first part, their successors and assigns, are not to be held liable for damages for any stoppage occasioned by such repairs and improvements or by breaks, floods, the drought of summer, nor for any other cause whatever, however long the said stoppage may continue, unless the said party of the first part shall take more time than thirty days in any one year to enlarge or in-

crease the capacity of said canal or main raceway, or to make entirely new additions thereto, in which case only the said party of the first part, their successors and assigns, shall be liable to an amount of damages not in any case to exceed the rent which would have accrued during such cases over thirty days, estimating the rent of the said one hundred square inches of water to be drawn as aforesaid at $300 per annum." The grant also provided that in case the grantee should experience a deficiency of water to supply the one hundred square inches, and the deficiency should arise from the neglect of the grantor to make the necessary and needful repairs to the canal or raceway, the grantee might, after ten days' notice in writing to the grantor, make such repairs, and the grantor was bound to repay the cost thereof to be determined by referees.

The third grant is of twenty-five square inches of water and the conditions are the same as in the last-mentioned grant. The printed copy of this grant, however, contains a provision by which the grantor agreed to uphold, maintain and repair the canal or main raceway and the guard walls, banks and other appendages thereof, and in case a breach should happen to be made, or any other casualty should occur to the canal or its appendages, by reason of which the water should not be supplied, that they would repair the same within as short a time as the nature of the case admitted.

The fourth grant is by way of lease for one hundred and twenty square inches of water under a head of three feet, at a rental of $313. This lease is merely a lease of the water and contains only a covenant on the part of the lessee to pay the rent.

The water was shut off at the time of which the plaintiff complains in order to permit the city of Trenton to construct a drain under the water power canal, for which the city agreed to pay the defendant in liquidation of its loss of rentals and the interruption of its business. The water power company took advantage of this period of time to make certain repairs. The trial judge charged the jury that the water could be lawfully shut off for repairs and improvements, but that the

rights of the defendant were limited to the repairs that were made, if those repairs required the shutting off of the water and was only for such time as was required for the repairs, and that for damages caused by the mill being shut down while the repairs were being made the plaintiff could not recover. The defendant insisted that the plaintiff could only recover damages for the number of working days in excess of thirty, and that inasmuch as the water was not shut off for thirty working days, deducting the intervening Sundays, the plaintiff was not entitled to recover.

For the defendant in error, *Linton Satterthwait*.

For the plaintiff in error, *Malcolm G. Buchanan* (*James Buchanan* on the brief).

The opinion of the court was delivered by

SWAYZE, J. The difficulties of construing the provisions of the grants are very considerable, and are increased by the different language in which the earliest grant by way of lease and release and the subsequent grants by way of deeds of bargain and sale are expressed. The view we have taken of the case relieves us from a further difficulty which might be presented under conceivable circumstances by reason of the fact that the last lease contains no conditions at all. The question to be decided is whether by the terms of these instruments the water power company had the right to shut off the water from the plaintiff's mill for a purpose foreign to the operations of the water power company itself. We find it convenient to deal first with the provisions of the lease. In substance the lease allowed the water power company thirty days for the purpose of making repairs in three different contingencies: *First,* if a breach should happen to the banks; *second,* if there should be a stoppage of water to be occasioned by widening, clearing out or repairing the canal; *third,* in case of a stoppage for thirty days in any one year for necessary purposes in the discretion of the water power company. The present case does not fall within either of these categories. The trial

judge allowed the jury to return a verdict only for such stoppage as was caused by the works of the city of Trenton under the contract with the defendants. The building of the drain by the city of Trenton was a contingency not covered by the lease. It was not a case where a breach happened to the banks, nor a case of a stoppage of water occasioned by widening, clearing out or repairing the canal, nor was it a stoppage of water for necessary purposes, for we think it quite clear that the necessary purposes referred to were such purposes as might be necessary to enable the water power company to carry out its contract to uphold, maintain and repair the canal or raceway, and that allowing the city to construct a drain was the voluntary act of the water power company and not necessary. A further question arises under the provision of the lease which limits the amount of recovery in case there should be a deficiency of water to supply the lessee with the quantity thereby leased, and the deficiency should be caused or continued after notice through the willful neglect or misconduct of the lessor. It may, of course, be said that an entire stoppage of the water necessarily involves a deficiency, but we think that the words "deficiency of water" in the latter part of the lease are contrasted with the stoppage of water provided for in the clauses immediately preceding. The word "deficiency" naturally conveys the idea that some water is furnished, but not as much as should be, and when, as in this case, the deficiency is a deficiency of water to supply the lessees with the quantity leased, the argument is still stronger that the parties contemplated a case where the lessor did not fail wholly to supply water, but failed to supply the full quantity.

Another question is presented by the language of the condition in the deeds of bargain and sale. The language of that condition exempts the grantor from damage for any stoppage occasioned by any cause whatever, however long the stoppage may continue. We recognize the correctness of the rule of construction stated by Lord Wensleydale in the famous case of *Grey* v. *Pearson,* 6 *H. L. Cas.* 61 (at *p.* 106), cited in the brief for the defendant, that the grammatical and ordinary sense of the words is to be adhered to, but Lord Wensleydale

is careful to add: "Unless that would lead to some absurdity
or some repugnance or inconsistency with the rest of the in-
strument, in which case the grammatical and ordinary sense
of the words may be modified, so as to avoid that absurdity
and inconsistency, but no farther." The words "any other
cause whatever, however long said stoppage may continue," if
read literally, would exempt the water power company from
liability in case they chose to sell the water to the city of Tren-
ton for municipal purposes and divert it entirely from the
purpose of furnishing power to the mills to whom the water
was sold or leased. Thus construed the effect would be that
the grant made for a valuable consideration would be only a
grant during the will of the grantor, and would be repugnant,
for the deed purports to convey an estate in fee-simple. If
such were the proper construction it is difficult to explain
why the same clause of the deeds should allow an action for
damages in case the water power company undertook to en-
large or increase the capacity of the canal and took more time
than thirty days in any one year for that purpose. In that
case the company, by the terms of the lease, would be liable
to an action for damages where the stoppage of water was due
to its effort to enlarge and improve its canal, presumably for
the benefit of all concerned, and would be exempt from an
action for damages where it stopped the supply of water en-
tirely. The Trenton Delaware Falls Company was originally
incorporated for the purpose of creating a water power at the
city of Trenton, and it was authorized to build a dam in the
Delaware river, to cut a raceway, with branch raceways and
other works for the purpose of creating and using the said
water power for mills, manufacturing and no other purpose.
*Pamph. L.* 1831, *p.* 131. Its successor, the Trenton Water
Power Company, was incorporated to hold the same works,
franchises and real estate in the same manner as the original
stockholders. *Pamph. L.* 1844, *p.* 85. The construction con-
tended for, if the words are read in their most general and
unqualified sense, would enable the defendant to escape lia-
bility for an abandonment of the very purpose for which it
was chartered. Such a construction is, in the words of Lord

Wensleydale, "absurd, repugnant and inconsistent with the rest of the instrument." We are under no necessity of adopting that construction. We think that a reading of the entire deed in the light of the charter of the water power company and of the provisions by which it agreed to uphold, maintain and repair the canal or raceway, demonstrates that the words were used in a more restricted sense. They are coupled with words exempting the company from liability for damages for a stoppage occasioned by repairs, improvements, breaks, floods and drought. All of these causes, except the improvements, are causes beyond the control of the company, and the parties evidently had in mind that there might be other causes beyond the control of the company for which they ought to provide necessary purposes in the words of the case, and for such causes it was natural and proper that they should agree that the company should be exempt from liability for damage. When they came to the question of a stoppage due to improvements, enlarging or increasing the capacity of the canal, they recognized that such a stoppage was within the control of the water power company, and that, in that case, it would be proper to allow damages in case the company took an unreasonable time to enlarge or increase the capacity of the canal; this explains the provision which allows them, in such a case, only thirty days in a year, when, for other causes, they were exempt from liability however long the stoppage might continue. In short, we think the meaning of the words in question would be more accurately expressed if the instrument read: "Nor for any other cause whatever beyond the control of the water power company, however long the stoppage might continue." The case differs from that of *Middlesex Water Co.* v. *Knappmann-Whiting Co.,* 35 *Vroom* 240. In that case the water company had made an absolute agreement to supply water, and it was held by this court that there could not be imported into that agreement an exemption from liability where the company was prevented from fulfilling its contract by an unforeseen accident. In the present case the water company has undertaken to exempt itself from liability in certain cases, and the contention is that the language is

such as to exempt it absolutely, whatever the cause may be. We think such a construction of the exemption is destructive of the conveyance itself. The case differs also from the case in the Supreme Court of *Buchanan & Smock Lumber Co.* v. *East Jersey Coast Water Co.,* 42 *Id.* 350. That was a case of a mere contract to supply water for fire protection, and the contract provided that the company should not be liable for a deficiency or failure in the supply occasioned by any cause whatsoever. The contract there was for an intermittent supply which might or might not be required. There was nothing absurd or repugnant or inconsistent in the construction there adopted. The present case is a case of a grant in fee of so much water, intended as a continuous supply for the purpose of furnishing power to a mill, and the construction contended for would destroy the grant instead of merely exempting the defendant from liability. The difference between the two cases is analogous to the difference between an agreement to supply all the crops of a farm, with an exemption from liability in case of a failure of crops from any cause whatever, and a grant of the land itself with a provision that the grantor might prevent the grantee from occupying it at any time he chose.

The counsel for the plaintiff in error seems to have seen the difficulty into which the broad construction for which he contends would lead him, for he urges that the limitation of liability is a limitation only for thirty days in any one year, but the deeds do not couple the provisions as to thirty days with any cause except a stoppage caused by enlarging or increasing the capacity of the canal or making new additions thereto. When the stoppage is for any other cause the defendant is exempt from liability, however long the stoppage may continue. The evidence in the case showed that the time occupied for repairs was less than the time during which the water was shut off, and we think the trial judge was quite right in allowing the plaintiff to recover for the damages suffered during the period when the water was shut off and repairs were not being made. We find no error in the record, and the judgment is therefore affirmed, with costs.

*For affirmance*—THE CHIEF JUSTICE, GARRISON, SWAYZE, REED, TRENCHARD, PARKER, BERGEN, VOORHEES, MINTURN, BOGERT, VREDENBURGH, VROOM, GRAY, DILL, J.J. 14.

*For reversal*—None.